1

2

3

4

5

6

7            IN THE UNITED STATES DISTRICT COURT

8          FOR THE EASTERN DISTRICT OF CALIFORNIA

9   JERRY VERNON KING,

10          Petitioner,                    No. CIV-S-03-0629 LKK JFM P

11      vs.

12   MIKE KNOWLES,                         ORDER AND

13          Respondent.                    FINDINGS AND RECOMMENDATIONS

14   _____/

15          Petitioner is a California prisoner proceeding with an application for writ of

16   habeas corpus under 28 U.S.C. § 2254.  Following a jury trial in the Superior Court of

17   Sacramento County, petitioner was convicted of possession of methamphetamine and possession

18   of a firearm by a person convicted of a felony.  (Answer, Ex. 1 at 1.)  Jurors also found that

19   petitioner was personally armed with a firearm in the commission of a methamphetamine

20   offense.  (Id.)  Petitioner is currently serving a sentence of thirty-years-to-life imprisonment.  (RT

21   912.)

22   I.  Background

23          Petitioner was charged with unlawful possession for purpose of sale of a

24   controlled substance, methamphetamine and amphetamine, and with being personally armed with

25   a firearm during the commission of those two counts.  (November 20, 1996 Amended

26   Information No. 96F02091, Clerk's Transcript ("CT") at 101-02.)  Petitioner was also charged

with unlawful possession of ammunition and a firearm because he previously suffered the following felony convictions:  first degree burglary of an inhabited dwelling house (1976), voluntary manslaughter with the personal use of a firearm (1989), possession of dangerous drugs (1966), burglary (1968), possession of a dangerous weapon (1969), involuntary manslaughter (1970), possession of dangerous drugs (1971), ex-felon in possession of a firearm (1981), and accessory to robbery (1987).  (CT 103-05.)  Within those two counts, petitioner was also charged with being armed with a firearm during the unlawful possession of ammunition and weapon. (Id.)

Petitioner was also charged with possession of a controlled substance, diazepam, also known as Valium, and codeine and charged with being armed with a firearm during the unlawful possession of these substances.  (CT 105-06.)  Finally, petitioner was charged under California's Three Strikes Law as having five prior felony convictions pursuant to California Penal Code § 667.5(b).[1]  (CT 107-09.)

After jury trial, petitioner was convicted of the lesser included offense of simple possession of methamphetamine (count one) and possession of a firearm by a person convicted of a felony (count four).  (Answer, Ex. 1 at 1.)  Petitioner was found not guilty of counts two, three, five and six.  (Id.)  Jurors also found that petitioner was personally armed with a firearm in the commission of a methamphetamine offense.  (Id.)  On December 19, 1997, the court found the prior conviction and prison term allegations to be true.  (RT 790-802.)

At sentencing, the trial judge refused to follow the probation officer's recommendation that petitioner be sentenced to two life sentences, but also refused to strike two of petitioner's prior convictions.  (RT 910.)  Petitioner was sentenced to state prison for a total of 30 years to life, which included an indeterminate 25 years to life term for his drug conviction

---

[1]  The information noted petitioner's convictions for voluntary manslaughter, accessory to robbery, ex-felon in possession of a firearm, first degree burglary, and involuntary manslaughter. (CT 107-09.)

1  under the California Three Strikes law, one year for the armed enhancement and an additional

2  year for each of his four prison term enhancements.[2]  Petitioner's sentence on the firearm

3  conviction was stayed pursuant to § 654.  (RT 912.)

4         After sentencing, petitioner appealed his convictions and sentence to the

5  California Court of Appeal.  (Pet., Ex. D attached to Ex. A.)  The Court of Appeal summarized

6  the evidence supporting petitioner's convictions and sentence as follows:[3]

7         On March 8, 1996, a few minutes after midnight, Cynthia Rice
   reported to the Sacramento Police Department that she had been

8  robbed by an acquaintance, James Scharp.[4]  Rice said that Scharp
   lived at 3035 Del Paso Boulevard, that he was a methamphetamine

9  seller and had a lot of guns inside his residence.  She said he lived
   with a parolee named Jay, and that Jay lived in a converted room in

10  the back.

11        Officer Mark Coopwood dialed the telephone number for Scharp
   given him by Rice.  A male answered but hung up when Officer

12  Coopwood asked if James was there.  Less than a minute later, and
   within an hour of Rice's report, police officers went to 3035 Del

13  Paso Boulevard and found two structures, a house and a detached
   garage remodeled into a residence in back.  A van similar to one

14  described by Rice as used by Scharp in the robbery incident was
   parked in the driveway; the hood was warm to the touch.  Officer

15  Coopwood testified that at the time he arrived, he knocked on the
   door of the house very loudly with a baton, announcing the

16  presence of the police officers and their desire to be admitted.  No
   one answered the door and no noise was heard from within.

17  [Footnote omitted.]

18        Officer Deborah Langston was assigned to the area in back of the
   house; she heard noises and voices coming from the detached

19  garage.  Officer Coopwood responded to this information; he came
   to the detached garage and knocked on the door.  The defendant

20  and a woman came to the door.  The police ordered them out.

21

22     [2]  The court clarified that the prior convictions that fell under § 667.5 were prior number
   one, number two, number three and number five.  (RT 912.)

23

24     [3]  The statement of facts is taken from the opinion of the California Court of Appeal for
   the Third Appellate District in People v. King, No. C029274 (Aug. 23, 1999), a copy of which is
   attached as Exhibit 1 to Respondents' Answer.

25

26     [4]  The Court of Appeal refers to James Scharp.  However, all other records refer to James
   Schlarp.

Officer Coopwood entered the detached garage and saw a hypodermic syringe and a spoon containing a substance he inferred was a narcotic.  The officers ran a warrant check and determined the [petitioner] was on parole.  A copy of the standard conditions of parole form with [petitioner's] signature subscribed was adduced in the Penal Code section 1538.5[5] proceeding.

Officer Langston searched the detached garage.  In the bathroom she found a holster, a spoon containing a white powder substance, a shaving kit bag containing plastic baggies, 17 syringes, and glass vials.  In the closet was  a black suitcase.  In the suitcase were baggies and glass vials containing suspected narcotics, including green pills in a vial, and some other pills in a baggie and $335.80.  Inside a Kleenex box atop a dresser was a syringe and suspected narcotics.  In one dresser drawer was a box of .22 caliber long rifle ammunition.  Under the mattress was a .38 caliber handgun.

Officer Scott MacLafferty spoke with the [petitioner] after his arrest.  The [petitioner] told him that he lived "off and on" in the detached garage for the past couple months.  He said he and the woman found when the police arrived had used a $25 bag of methamphetamine.  He said the gun belonged to Scharp, that he had found it in a dresser drawer, wrapped it in a red handkerchief, and put it under his mattress.  [Petitioner] said he knew he was not supposed to have it.

Officer MacLafferty asked about the shaving kit because a large amount of methamphetamine was found in it.  The [petitioner] said the shaving kit was his.  The [petitioner] disclaimed knowledge of any drugs in the detached garage except for some marijuana in a dresser.

Subsequent testing showed the suspected controlled substances on the spoon, in the shaving bag, in the Kleenex box and some of the material in the suitcase was methamphetamine.  Apparently the pills in the suitcase were Codeine and Valium and other material in the suitcase was methamphetamine.

(People v. King, slip op. at 2-4.)  The Court of Appeal affirmed petitioner's convictions and

sentences.  (Id. at 12.)  Although he was represented by counsel, petitioner did not seek review of

the Court of Appeal's decision in the California Supreme Court.  (Answer at 5:8-9.)  After direct

/////

---

[5] California Penal Code § 1538.5 concerns, among other things, motions to suppress evidence filed by criminal defendants.

4

1  review, petitioner sought collateral relief[6] in the Superior Court of Sacramento County (Pet., Exs.

2  M & N attached to Ex. A), the California Court of Appeal (Pet., Ex. A), and the California

3  Supreme Court (Answer Exs. 2 & 8).  All of those requests were denied.  (Answer, Exs. 3, 5, 7 &

4  9.)

5  ANALYSIS

6  II.  <u>Standards for a Writ of Habeas Corpus</u>

7        Federal habeas corpus relief is not available for any claim decided on the merits in

8  state court proceedings unless the state court's adjudication of the claim:

9       (1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
10      determined by the Supreme Court of the United States; or

11      (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
12      State court proceeding.

13 28 U.S.C. § 2254(d).

14       Under section 2254(d)(1), a state court decision is "contrary to" clearly

15 established United States Supreme Court precedents if it applies a rule that contradicts the

16 governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

17 indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

18 result.  <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406

19 (2000)).

20       Under the  "unreasonable application" clause of section 2254(d)(1), a federal

21 habeas court may grant the writ if the state court identifies the correct governing legal principle

22 from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

23 prisoner's case.  <u>Williams</u>, 529 U.S. at 413.  A federal habeas court "may not issue the writ

24

25     [6] The first petition in the Superior Court was filed pro se, but new counsel filed an
amended petition and all subsequent filings seeking collateral relief.  Petitioner is presently
26 represented by that subsequent counsel.

1  simply because that court concludes in its independent judgment that the relevant state-court

2  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

3  application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63,

4  123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent

5  review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

6          The court looks to the last reasoned state court decision as the basis for the state

7  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

8  III.  Petitioner's Claims

9          A.  Ineffective Assistance of Trial Counsel (Ground 1)

10                  Petitioner asserts his trial counsel rendered ineffective assistance of counsel in

11  violation of the Sixth Amendment.  The Supreme Court has enunciated the standards for judging

12  ineffective assistance of counsel claims.  See Strickland v. Washington, 466 U.S. 668 (1984).

13  First, a defendant must show that, considering all the circumstances, counsel's performance fell

14  below an objective standard of reasonableness.  Strickland, 466 U.S. at 688.  To this end, the

15  defendant must identify the acts or omissions that are alleged not to have been the result of

16  reasonable professional judgment.  Id. at 690.  The court must then determine whether in light of

17  all the circumstances, the identified acts or omissions were outside the wide range of professional

18  competent assistance.  Id.  Second, a defendant must affirmatively prove prejudice.  Id. at 693.

19  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional

20  errors, the result of the proceeding would have been different." Id. at 694.  A reasonable

21  probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also

22  United States v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985); United States v. Schaflander, 743

23  F.2d 714, 717-18 (9th Cir. 1984) (per curiam).

24          1.  Third Party Confession

25          Petitioner asserts his trial counsel "neglected to present evidence to the jury

26  concerning a third party's confession to the drug offense that Mr. King was convicted of

6

1   committing." (Pet at 5.) Petitioner elaborates in his traverse. Apparently, trial counsel was

2   aware of a witness who would testify that James Schlarp told him that all the drugs confiscated

3   when petitioner was arrested actually belonged to Schlarp. (Traverse at 14:24-28.)

4           The state superior court rejected this claim, noting petitioner presented "no

5   evidence of what evidence could and should have been presented." (Answer, Ex. 5 at 2.)

6   Petitioner presented

7           no declaration showing what Simms would have stated that
        Schlarp told him; nor is there evidence of what Schlarp would have
8           testified to, had he been subpoenaed. Moreover, had the evidence
        of Schlarp's statement been admitted, the prosecutor stated that it
9           was his intention to show that . . . Schlarp may have made the
        statement to make others fear him, thus reducing the inculpatory
10          nature of the statement. (See RT 309.) Therefore, there has been
        no showing of prejudice flowing from any alleged failure to present
11          evidence.

12  (Answer, Ex. 5 at 2.)

13          Petitioner has again failed to provide a declaration, either by trial counsel or Mr.

14  Simms (the person to whom Mr. Schlarp may have made the incriminating statement), either

15  demonstrating that Mr. Schlarp was available to testify at trial or detailing Mr. Simms' specific

16  testimony.

17          Moreover, the evidence that petitioner possessed methamphetamine was

18  overwhelming. As noted above, there was evidence that petitioner admitted to Officer

19  MacLafferty: (1) petitioner and Deborah Vogelpohl used $25.00 of methamphetamine on the

20  night he was arrested (RT 379:17-28); and (2) the shaving kit with methamphetamine found

21  inside belonged to petitioner. (RT 241:8-242:17; 382:1-383:15; Respondent's Supp. Brief Ex.

22  A.) Also, Officer Coopwood testified that on the night he was arrested, petitioner had informed a

23  nurse that he had used methamphetamine earlier in the evening. (RT 153:9-154:26.) Finally,

24  Officer Langston testified that when she walked into the detached garage on the night petitioner

25  was arrested she noticed syringes on top of a dresser and a spoon containing a substance which

26  was later found to be methamphetamine. (RT 188:20-191:24; 230:12-231:5; 249:27-250:17;

7

1  Respondent's Supp. Brief Ex. A.)  The following amounts of methamphetamine were attributed

2  to these items:

3       Spoon - 1.70 grams  (Trial Ex. 56)

4       Shaving Kit - 5.7 grams (Trial Ex. 1)

5       Kleenex Box - syringe and Dixie cup containing 6.39 grams. (Trial Ex. 5)

6  (Respondent's Supp. Brief at 3-4, Ex. A.)

7          In light of evidence that petitioner was actually using drugs on the night he was

8  arrested, any evidence indicating a third party admitting that the drugs found with petitioner were

9  the third party's would not have changed the outcome of the jury's verdict.  Trial counsel cannot

10  be deemed ineffective for failing to present evidence indicating that James Schlarp made an out-

11  of-court statement that the drugs found were his.

12          2.  <u>Failure to Object to Prior Bad Acts</u>

13              Petitioner claims trial counsel was ineffective for failing to "object to the

14  prosecution's admission of uncharged weapon possession evidence."  (Pet at 5.)  Petitioner fails

15  to elaborate further in this claim in his petition or in his traverse.  Because it is petitioner's

16  burden to establish his entitlement to habeas corpus relief, this claim should be rejected.

17          The court notes that at the California Supreme Court, on habeas review, petitioner

18  asserted that he was subjected to ineffective assistance of counsel because counsel failed to

19  object to evidence adduced by the prosecutor concerning [petitioner's] uncharged possession and

20  connection to weapons other than the one petitioner was charged with possessing.  (Answer, Ex.

21  8 at 18.)  At the California Court of Appeal, petitioner argued:

22          During the trial, [petitioner] was charged with being a convicted
        felon in possession of a gun and ammunition.  (CT 102-105.)

23          However, the prosecution's presentation of evidence concerning
        King's purported firearm and ammunition possession was not

24          limited to the gun and ammunition specified in the accusatory
        pleading.  Indeed, the prosecution presented evidence that King

25          had tried to scare a prosecution witness with a stun gun.  (RT 458-
        459.)  The stun gun was recovered from the room in which

26          [petitioner] had been immediately before his arrest in this case.

1  (RT 218-219.)  The prosecution also presented evidence that a
2  knife was found by police in that room at the time of [petitioner's]
   arrest.  (RT 237.)  Further, the prosecution presented evidence that
3  a "pistol crossbow" was seized in the room.

4  (RT 238.)(Pet. Ex. A at 39-40.)

5        The state superior court rejected petitioner's claim, stating:

6        While it is unclear what relevance those items would have in the
         case, Petitioner has not identified any specific manner in which the
7        evidence was detrimental to him.  Furthermore, it appears from the
         record that there was evidence that some of the items belonged to
8        Schlarp, so the evidence could have been beneficial to Petitioner in
         that there was evidence that Schlarp owned items found in the
9        room where Petitioner was found, which was Petitioner's defense
         to the narcotics charges.
10

11  (Answer, Ex. F at 2.)

12        This court cannot find that trial counsel was ineffective for failing to object to the

13  evidence identified by petitioner.  Again, the evidence considering whether petitioner possessed

14  methamphetamine was overwhelming without consideration of the evidence identified.

15  Exclusion of this evidence would have had no effect on the jury's verdict with respect to

16  possession of methamphetamine.  The same goes for whether petitioner was in possession of a

17  firearm.  Evidence was presented that petitioner told a police officer that the gun that was found

18  in the detached garage belonged to Schlarp, but when petitioner found it in a dresser drawer he

19  wrapped it in a handkerchief and placed it under his mattress.  (RT 380:7-28.)  In light of this

20  evidence, the court cannot find that there is a reasonable probability that the jury's verdict that

21  petitioner did possess a firearm was the result of the unrelated evidence indicating that a stun

22  gun, knife and "pistol crossbow" were found in the detached garage or that petitioner acted

23  irresponsibly with the stun gun.  Moreover, the jury was properly admonished after the testimony

24  of Lee Simms and Cynthia Rice that the jury was not to consider the uncharged evidence as

25  propensity evidence, that is, that petitioner was "a person of bad moral character or that he tends

26  to commit crimes in general."  (RT 480.)

3. <u>Failure To Request Jury Instruction Regarding Temporary Lawful Possession</u>

Petitioner claims his trial counsel should have requested "a jury instruction to support the defense of . . . lawful temporary possession" with respect to petitioner's conviction for possession of a firearm by a felon.  (Pet at 5.)

Respondent provided a declaration by attorney Kevin Clymo in which he states:

> I believe I requested the trial court to instruct the jury pursuant to CALJIC No. 12.06,[7] or a modified version thereof, concerning momentary/temporary possession of a firearm.  I do not recall whether any such request was made on the record.  But, my file for Mr. King's case contained research and case notes regarding momentary/temporary possession.  And, I acknowledged during closing argument that my client had admitted to briefly moving the gun in question.  However, the evidence supported my argument that Mr. King exercised virtually no dominion and control over the gun.  If I did not request a momentary/temporary possession instruction, the omission was an oversight.

(Answer, Ex. 10 at 3.)

In <u>People v. Mijares</u>, 6 Cal.3d 415, 423 (1971) the California Supreme Court indicated that a person could not be convicted for possession of a narcotic if jurors found that the defendant "merely handl[ed] [the narcotic] for only brief moments prior to abandoning the narcotic."[8]  The parties debated whether, under California law, the lawful temporary possession

/////

/////

/////

_____

[7] CALJIC No. 12.06, "Momentary Possession as Not Unlawful," provided that possession of an item is not unlawful where all four of the following conditions were met: (1) possession is "momentary" and "based on neither ownership nor the right to exercise control over" the item; (2) the item is "possessed in furtherance of its abandonment or destruction"; (3) the item is possessed "for the purpose of terminating the unlawful possession of it by another person or preventing another person from acquiring possession of it"; and (4) "control is not exercised over the [item] for the purpose of preventing its imminent seizure by law enforcement."  (CALJIC No. 12.06.)

[8] In <u>Mijares,</u> the defendant removed an object from the pocket of the passenger in his car and threw it into a field.  <u>Id.</u> at 417.

1   defense applies to a charge of possession of a firearm by a felon.[9]  The court need not resolve that

2   debate.

3          As noted above, evidence was presented that petitioner told a police officer that

4   the gun that was found in the detached garage belonged to Schlarp, but when petitioner found it

5   in a dresser drawer he wrapped it in a handkerchief and placed it under his mattress.  (RT 380:7-

6   28.)  There is nothing in the facts which suggests petitioner possessed the gun only for moments[10]

7   and nothing suggests he ever abandoned the gun or even intended to abandon the gun after he

8   took control of it.  Rather, petitioner moved the gun closer by placing it under "his" mattress,

9   thus providing easier access.  Placing the gun under the mattress is not the same as throwing it

10  into an empty field and does not support an argument that he intended to abandon the gun.[11]

11

12      [9]  At the time of petitioner's trial in 1997, there was a split of authority in California.
People v. Pepper, 41 Cal.App.4th 1029, 1036-38 (Mijares defense does not apply to § 12021;

13  "section 12021 prohibits a convicted felon from possessing a firearm even momentarily except in
self-defense, in defense of others, or as a result of legal necessity," reasoning that "innocent"

14  possession could not occur because one would readily know the nature and purpose of a firearm,
and one could not legitimately possess a firearm momentarily to prevent its illegal possession by

15  another) and People v. Hurtado, 47 Cal.App.4th 805, 812-14 (1996)(Mijares defense does apply
to § 12021, but defendant not entitled to Mijares instruction because his possession of the

16  weapon for a period of days was not momentary).  Petitioner claims the California Supreme
Court has sided with Hurtado.  People v. Martin, 254 Cal.4th 1180 (2001).  The Martin court's

17  reference to firearms is dictum.  The Martin court agreed with Hurtado "that recognition of a
'momentary possession' defense serves the salutary purpose and sound public policy of

18  encouraging disposal and discouraging retention of dangerous items such as controlled
substances and firearms."  Id. at 1191.  However, the Martin case involved narcotics.  The

19  California Supreme Court did not overrule Pepper and cited it twice in the Martin opinion.  Id., at
1185 n.5, 1190.  Petitioner has not cited and this court has not found a case where the California

20  Supreme Court applied the Mijares defense to a case of a felon in possession of a firearm.

21      [10]  As respondent noted, counsel attempted to elicit testimony that the possession was
temporary.  (Answer at 21, n.21.)  Counsel asked an officer witness "when he saw it [the gun] he

22  took temporary custody of it to put it in a place to secure it, is that correct, under the mattress."
(RT 405.)  The prosecution objected that the question misstated the evidence.  (RT 405.)

23  Counsel later attempted to get the officer to state petitioner had expressed a desire to put the
weapon where it wouldn't be a problem for him and to clarify whether petitioner had stated he

24  put the weapon under "a" mattress rather than "his" mattress, but the officer responded "He said
he wrapped it in a red handkerchief and put it under his mattress."  (RT 408.)

25      [11]  During the sentencing hearing, defense counsel argued that there was no ammunition
in the room that fit the gun.  (RT 901.)  Counsel argued that it was untenable to argue that

26  petitioner placed the gun under the mattress for self-protection because it was not loaded.  (RT

1   Because the facts do not support the giving of such an instruction, petitioner cannot show

2   prejudice for failure to instruct jurors with respect to the defense of temporary lawful possession,

3   petitioner's third claim of ineffective assistance of counsel should be rejected.

4           4.  Failure To File A Motion Asking That Possession of
               Methamphetamine Be Treated As A Misdemeanor

5

6           Petitioner claims trial counsel should have asked at sentencing that his conviction

7   for possession of methamphetamine be treated as a misdemeanor rather than a felony.  (Pet. at 5.)

8   Petitioner cites California's Proposition 36.[12]

9           Federal collateral review of a state criminal conviction is limited to determining

10  whether petitioner's federal constitutional or other federal rights have been violated and does not

11  extend to review a state's application of its own laws.  Jackson v. Ylst, 921 F.2d 882, 885 (9th

12  Cir.1990); see e.g. Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir.1994) (recognizing that

13  the decision whether to impose sentences concurrently or consecutively is a matter of state

14  criminal procedure and is not within the purview of federal habeas corpus).  Federal courts must

15  defer to the state courts' interpretation of state sentencing laws.  Estelle v. McGuire, 502 U.S. 62,

16  67-68 (1991); Bueno v. Hallahan, 988 F.2d 86, 88 (9th Cir.1993).  Absent a showing of

17  fundamental unfairness, a state court's application or misapplication of its own sentencing laws

18  does not generally justify federal habeas relief.  Christian v. Rhode, 41 F.3d 461, 469 (9th

19  Cir.1994).  "So long as the type of punishment is not based upon any proscribed federal grounds

20  such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the

21  /////

22

23  901.)  However, California Penal Code § 12021 does not require that the firearm be loaded.  (Id.)
    Petitioner was acquitted of the charge of ex-felon in possession of ammunition.

24          [12]  Proposition 36, the Substance Abuse and Crime Prevention Act of 2000, was approved
    by the voters on November 7, 2000, and took effect on July 1, 2001. (Cal. Penal. Code §§ 1210,
25  1210.1.)  Proposition 36 requires the court to grant probation and drug treatment to any defendant
    convicted of a nonviolent drug possession offense and prohibits incarceration as a condition of
26  probation.  (Cal. Penal. Code § 1210.1, subd. (a).)

1  penalties for violations of state statutes are matters of state concern." See Makal v. Arizona, 544

2  F.2d 1030, 1035 (9th Cir.1976).

3         In light of United States Supreme Court authority, this court cannot find that

4  petitioner's sentence was fundamentally unfair. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

5  Bueno, 988 F.2d at 88. As the California Supreme Court explained, the savings clause in

6  Proposition 36 operates to make the statute apply only prospectively to drug offenders convicted

7  after July 1, 2001. People v. Floyd, 31 Cal.4th 179, 182-88 (2003). As the California Supreme

8  Court found that the legislature did not intend Proposition 36 to apply to cases in which the

9  conviction had not yet become final, this court cannot find that petitioner's sentence was

10  fundamentally unfair.

11         A review of the record also reflects that counsel was not ineffective for failing to

12  expressly make a motion to have the possession sentenced as a misdemeanor. Petitioner argues

13  that the trial court invited defense counsel to make a motion pursuant to Cal. Penal Code § 17(b)

14  to have the possession of methamphetamine sentenced as a misdemeanor. (RT 638, 653-54.)

15  However, the record reflects that defense counsel strenuously argued that the jury should be

16  separately instructed as to the lesser amount of methamphetamine from the greater amount of

17  methamphetamine and amphetamine found in the suitcase, which would have allowed the court,

18  had the jury found petitioner guilty of simple possession of a small amount of methamphetamine,

19  to consider sentencing petitioner to misdemeanor possession. (RT 635-654.) The trial judge

20  found no case law to support defense counsel's position and held that it was a sentencing issue.

21  (RT 654.) The trial judge stated "I'm not foreclosing you from raising these and related issues at

22  the time of judgment and sentencing should [petitioner] be found guilty of the lesser offense, the

23  11377." (RT 654.)

24         During sentencing, defense counsel reminded the trial judge that he had asked for

25  a unanimity instruction to allow the jury to fix guilt for possession of a small amount of

26  methamphetamine compared to the quantity of drugs found in the room. (RT 809.) Defense

counsel noted that "the Court at the time said if the jury only convicts Mr. King of simple possession, then I'm going to have to assume that it was for the smallest quantity that was there in that room." (Id.)  Defense counsel noted that the jury foreman had expressed petitioner was, at a minimum, guilty of felony stupidity.  (RT 810.)  Defense counsel stated he had discussed this case informally with the judge.  (RT 810.)  Counsel argued that petitioner should not get a life sentence "for a quantity of methamphetamine that was lying open in a spoon and for a gun that wasn't his that a jury had to convict him on because they had no choice."  (RT 810.)  Counsel also argued that petitioner was not an individual who fit the spirit of the three strikes law.  (RT 810.)

The prosecution noted that counsel had discussed this case in chambers with the judge.  (RT 892.)  The trial court reiterated its concern about petitioner's history of gun use and possession of guns.  (RT 893.)  "[I]t's unsettling at best because he's constantly around firearms."  (RT 893.)  The prosecution argued that whether the firearm is for "protection or aggression, it's used for violence."  (RT 893.)  The prosecution further argued that petitioner does well in a controlled environment, but can't handle freedom.  (RT 894.)  The prosecution also pointed out that despite the witnesses' apparent belief that this case was a "probation versus prison type of decision" this case was "a decision whether this Court under our laws has the grounds to strike two or more strikes."  (RT 896.)  The prosecution argued that it would be an abuse of discretion for the trial judge to strike even one prior conviction.  (RT 897.)

Defense counsel responded that the trial court had absolute discretion to decide the case either way.  (RT 900.)

After a brief recess, defense counsel advised the judge that if the court did not sentence petitioner to a life sentence, the maximum determinant sentence petitioner could get would be 11 years.  (RT 903.)

The trial judge was heartened by the witnesses who testified on petitioner's behalf.  (RT 903-04.)  However, he focused on the "anomalous side" of petitioner, his criminal

record.  (RT 904.)  He noted petitioner's prior convictions included "at least two deaths for

manslaughter, repeated drug offenses, repeated weapons offenses, which has been [the judge's]

greatest concern, and numerous violations of parole and probation."  (RT 904.)  The judge

recalled that

> at the very outset of this case we were talking about striking strikes.  And it's something you and I and [the prosecution] talked about.   But I remember those same discussions in which I felt very uneasy about that due to the fact that you were asking me to strike not one, but two strikes in order to bring about the kind of result that would be fair to this defendant, give him the determinant sentence, and as you stated at the very outset of this case, some hope for this defendant. . . .
>
> Unfortunately, as I look back on [petitioner's] history, I think to some extent the courts and the system have taught [petitioner] how to fail.  Repeatedly he has been violating probation.  He has violated parole.  We put him back in prison.  We put him back in jail.  Never once have we really sat on top of him like the Dutch uncle and made him get in touch with his meth problem which has brought him in and out of the system for literally his entire life. . . .
>
> Unfortunately, . . . success which [petitioner has] experienced recently has only come with the great deal of structure. . . .  I would have to look with the very dim view on your future.  Because the past has been so miserable.
>
> But weighing all those things, which is not an easy thing for me as the judge to do, I do not believe that you should in your case receive the benefit of the determinant sentence.  And I'm going to . . . deny [counsel's] request for the release date or to sentence you under the determinant sentencing law.

(RT 905-07.)  Petitioner is correct that defense counsel could have asked the trial judge to

sentence petitioner to misdemeanor possession.  However, in light of the fact that counsel had

had many conversations with the judge about this case as well as the trial judge's position that

petitioner was not entitled to a determinant sentence, this court cannot find defense counsel was

unreasonable for failing to ask the court to sentence petitioner to misdemeanor possession, as it

would have been a futile request.  It is apparent that the prosecution would have opposed such a

request and the trial judge would have denied it.

1    Petitioner presents nothing indicating that there is a reasonable probability the

2    motion would have been granted, particularly in light of the trial judge's statements at

3    sentencing.  For example, even before counsel made arguments, the trial judge stated "that

4    because of [petitioner's] aggravated record going back 30 or more years that the judgment and

5    sentence should be severe."  (RT 803.)  The trial judge also noted his concern about petitioner's

6    fascination with firearms.  (RT 804.)  Review of the sentencing hearing record demonstrates it is

7    unlikely the trial judge would have agreed to sentence petitioner to misdemeanor possession of

8    methamphetamine, even if counsel had made such a request.  Thus, petitioner cannot prove

9    prejudice under Strickland.

10           B.  Ineffective Assistance of Appellate Counsel

11           Petitioner also claims appellate counsel was ineffective as petitioner's counsel on

12   direct appeal.  Kevin Clymo represented petitioner at trial and on direct appeal.  Petitioner asserts

13   several instances of ineffective representation.

14           The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

15   v. Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v.

16   Keeney, 882 F.2d 1428, 1433 (9th Cir.1989).  In order to demonstrate prejudice with respect to a

17   claim of ineffective assistance by appellate counsel, petitioner must demonstrate that but for

18   counsel's errors he probably would have prevailed on appeal.  Miller, 882 F.2d at 1434 n.9.

19           1.  Clymo Ineffective For Failing To Raise His Own Ineffectiveness At Trial

20           Petitioner asserts Mr. Clymo was ineffective for failing to argue on appeal that

21   Mr. Clymo was ineffective at trial.  However, because petitioner has not shown Mr. Clymo was

22   ineffective at trial this court cannot find that Mr. Clymo was ineffective on appeal.  See United

23   States v. Moore, 921 F.2d 207, 210 (9th Cir. 1990) (no prejudice under Strickland where

24   appellate counsel fails to raise meritless claim).[13]

25

26           [13]  Petitioner also argues that he is entitled to relief because Mr. Clymo suffered from a
     conflict of interest while representing petitioner on appeal.  It appears petitioner is arguing that

In <u>Cronic</u>, the Supreme Court carved out certain exceptions to the general <u>Strickland</u> rule, holding that in limited situations the defendant need not show prejudice, as required under <u>Strickland</u>.  <u>See</u> <u>United States v. Cronic</u>, 466 U.S. 648, 658 (1984).  Specifically, prejudice may be presumed when the defendant is "denied counsel at a critical stage of his trial," <u>id.</u> at 659, "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," <u>id.</u>, or "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial," <u>id.</u> at 659-60.  <u>See also</u> <u>Penson v. Ohio</u>, (488 U.S. 75 (1988) (where a defendant has been actually or constructively denied the assistance of appellate counsel altogether, <u>Strickland</u> does not apply, implying that <u>Strickland</u> does apply where counsel is present but ineffective.)  But apart from circumstances of this magnitude, "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."  <u>Id.</u> at 659 n.26.  For example, "failure of counsel to appear at oral argument or to file a reply brief is not so essential to the fundamental fairness of the appellate process as to warrant application of a per se rule of prejudice."  <u>See</u> <u>U.S. v. Birtle</u>, 792 F.2d 846 (9th Cir. 1986), citing <u>Morgan v. Zant</u>, 743 F.2d 775, 780 (11th Cir.1984), <u>overruled on other grounds</u>, <u>Peek v. Kemp</u>, 784 F.2d 1479, 1494 & n.15 (11th Cir.1986) (en banc); cf. <u>Hamilton v. McCotter</u>, 772 F.2d 171, 181-82 (5th Cir.1985).

---

Mr. Clymo was <u>per se</u> ineffective for representing petitioner on appeal given the circumstances of trial.  (Traverse at 38:11-17.)  However petitioner fails to show that any of his Constitutional rights were violated simply because Mr. Clymo represented petitioner on appeal.  Prejudice cannot be presumed where, as here, appellate counsel filed an appellate brief with several nonfrivolous issues, including issues contained in the instant petition.  <u>Cf.</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 286-87 (prejudice cannot be presumed when appellate counsel complied with valid state procedure for determining whether defendant's appeal is frivolous and State did not leave defendant without counsel on appeal).  This is not a case in which there was an "actual or constructive absence of the assistance of counsel" on appeal that deprived petitioner of his right to appeal or to pursue collateral relief.  <u>Cf.</u> <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000) (ineffective assistance of counsel demonstrated where counsel failed to file a notice of appeal, causing the forfeiture of petitioner's right to appeal); <u>Lozada v. Deeds</u>, 964 F.2d 956, 958-59 (9th Cir1992) (failure to file notice of appeal without petitioner's consent error per se).

1   "[I]t makes sense, assuming <u>Cronic</u> applies, to view the first appeal as of right as one critical

2   stage of the criminal process and not as a proceeding which comprises several individual critical

3   stages. <u>Birtle</u>, 792 F.2d at 849.

4           Here, appellate counsel's performance was deficient because he failed to file a

5   reply brief in the California Court of Appeal, failed to file an appeal in the California Supreme

6   Court and failed to file a state petition for writ of habeas corpus, despite counsel and his

7   associate's letters to petitioner advising petitioner that such actions would be taken.[14]  However,

8   counsel did effectively represent petitioner during trial, reviewed the trial proceedings and

9   perfected an appeal on behalf of petitioner, which appeal was heard on the merits.  Therefore,

10  petitioner did not suffer the actual or constructive absence of the assistance of counsel which is

11  legally presumed to result in prejudice.

12          Accordingly, petitioner must affirmatively prove prejudice, specifically that there

13  is a reasonable probability that, but for counsel's unprofessional errors, the result of the appeal

14  would have been different.  <u>Strickland</u>, 104 S.Ct. at 2068.

15          Petitioner makes much of counsel's failure to adequately argue that a <u>Mijares</u>

16  temporary possession of the weapon instruction was required.  However, as noted herein, this

17  court does not find there were facts sufficient to support said instruction.  Petitioner has failed to

18  highlight facts that support a finding that there is a reasonable probability the appeal would have

19  been granted had counsel taken the steps proposed by petitioner.  Indeed, at sentencing the trial

20  judge expressed his concern about petitioner's fascination with weapons and was clear he did not

21  believe an instruction on temporary possession was appropriate.  A review of the record did not

22  turn up any fact supporting abandonment of the weapon, which the jury instruction required.

23  There was no evidence to support a finding that petitioner's possession of the firearm was

24

25          [14]  Both Kevin Clymo and his associate, Brian J. Davis, provided declarations stating the
    failure to file a reply brief and a petition for review in the California Supreme Court on direct
26  review was the result of "mistake, neglect, and/or inadvertence."  (Answer, Ex. 11.)

fleeting or momentary.  And it is clear from the verdict of simple possession that the jury differentiated the larger cache of drugs found in the suitcase from the methamphetamine located in the spoon and the shaving kit.  Given petitioner's admission that he had recently used methamphetamine and that he was an ex-felon with a criminal record found to be in possession of a weapon, it is unlikely that any steps counsel could have taken, either in the California Supreme Court or on collateral review, that would have changed the outcome here.

Counsel was able to convince the jury that petitioner did not possess the drugs for purposes of sale.  Although the resulting sentence was indeed harsh, trial counsel fought hard at sentencing to get the trial judge to strike two of petitioner's prior convictions and the trial judge was convinced not to follow the probation officer's recommendation that petitioner be sentenced to two life sentences.  A review of the record and the appeal filed in the California Court of Appeal reflect that petitioner had benefit of counsel.  While it was unprofessional for appellate counsel to abandon petitioner after filing the appeal in the Third District Court of Appeal, and to mislead petitioner that efforts were underway to accomplish future filings that did not transpire, petitioner has failed to prove prejudice resulting from his attorney's deficient performance during the appeal.

2. Apprendi

Petitioner asserts appellate counsel "failed to raise an issue involving the principles set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000)."  (Pet. at 6.)  Specifically, petitioner asserts appellate counsel should have argued on appeal that the jury and not the sentencing judge should have been allowed to determine whether petitioner's conviction for possession of methamphetamine would be ultimately deemed a misdemeanor or a felony.  (Traverse at 44-49.)

In Apprendi, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Id. 530 U.S. at

490.  As described above, that is exactly what happened here:  the facts that triggered the

application of Cal. Pen. Code § 667 were submitted to petitioner's jury and proved beyond a

reasonable doubt.  In any event, Apprendi does not apply retroactively to cases on collateral

review.  Schriro v. Summerlin, 542 U.S. 348 (2004); Blakely v. Washington, 542 U.S. 296, 124

S.Ct. 2531, 2549 (2004) (O'Connor, J., dissenting).  Therefore, it cannot provide support for

petitioner's argument.

Petitioner fails to present anything indicating that appellate counsel was

unreasonable for failing to raise this issue on appeal.  The decision of the California Court of

Appeal concerning petitioner's direct appeal was filed on August 24, 1999.  (Answer Ex. 1 at 1.)

Petitioner fails to point to any state or federal case law which existed before the appellate court's

decision which renders unreasonable appellate counsel's failure to assert the issue suggested,[15]

and counsel cannot be deemed ineffective for failing to raise a "developing" claim.  Duetscher v.

Whitley, 884 F.2d 1152, 1158 (9th Cir. 1989), vacated on other grounds Angelone v. Deutscher,

500 U.S. 901 (1991).  Furthermore, to date, no California or federal court has held that California

crimes which may be characterized as either a misdemeanor or a felony at sentencing must be so

characterized by a jury.  This claim should be denied.

3.  Unanimity Instruction

Petitioner contends appellate counsel "failed to adequately develop the record on

appeal so as to be able to meaningfully present an issue concerning the failure of the trial court to

give a unanimity instruction to the jury."  (Pet. at 6.)

---

[15]  In his traverse, petitioner cites Jones v. United States, 526 U.S. 227 (1999).  In Jones, the defendant committed a carjacking which resulted in one victim suffering serious bodily injury.  Jones was charged under a federal statute that provided for a higher penalty range if the offense involved serious bodily harm or death.  The indictment and jury instructions did not include facts or subsections regarding the "serious bodily harm" element of the offense, and this element was not found by the jury beyond a reasonable doubt.  As a result, Jones' conviction and sentence, which was based on this element, were reversed.  Here, on the contrary, the facts that triggered the application of Cal. Pen. Code § 667 were charged in the information, submitted to petitioner's jury, and proved beyond a reasonable doubt.  Accordingly, Jones does not provide support for petitioner's argument.

On direct appeal, petitioner argued that the trial court erred in failing to instruct the jury that it must unanimously agree on what lot of each variety of controlled substance he possessed.  (People v. King, slip op. at 7.)  The state appellate court found that CALJIC 17.01[16] was unnecessary because there was no reasonable likelihood of prejudicial juror divergence. (People v. King, slip op. at 7-9.)

> The critical question concerns the prospect of material jury divergence; it is not enough that different evidence could support two different theories of the act constituting the offense, the pattern of the evidence must be that sets of jurors each might reasonably accept each theory and reject the other.
>
> In this case there were several caches of methamphetamine.  Since the jury returned no guilty verdicts as to the counts alleging unlawful possession of other controlled substances, we can ascertain that no juror convicted [petitioner] based on the methamphetamine in the suitcase.  That leaves the methamphetamine in the spoon, shaving kit, and Kleenex box. [Petitioner] admitted using methamphetamine on the night of the search, he admitted owning the shaving bag, and disclaimed knowledge of any other methamphetamine in the detached garage. In ascending order of potential for reasonable doubt, the potential for divergence is between the methamphetamine found in the spoon adjacent to a syringe (associated with admitted use), methamphetamine in the shaving kit (associated with admitted ownership of the container), and methamphetamine in the Kleenex box.
>
> On these facts a reasonable juror who would vote to convict on the basis of possession of methamphetamine in the Kleenex box or shaving bag would have no reasonable basis for rejecting the conclusion [petitioner] possessed the methamphetamine in the spoon.  In these circumstances there is no prospect of a material jury divergence, hence, no error in failing to instruct on jury unanimity.

(People v. King, slip op. at 9.)

---

[16] CALJIC 17.01 reads as follows:  "The defendant is accused of having committed the crime of [in Count ]. The prosecution has introduced evidence for the purpose of showing that there is more than one [act] [or] [omission] upon which a conviction [on Count ] may be based. Defendant may be found guilty if the proof shows beyond a reasonable doubt that [he] [she] committed any one or more of the [acts] [or] [omissions]. However, in order to return a verdict of guilty [to Count ], all jurors must agree that [he] [she] committed the same [act] [or] [omission] [or] [acts] [or] [omissions]. It is not necessary that the particular [act] [or] [omission] agreed upon be stated in your verdict."  (Id.)

On habeas review, the state superior court rejected this claim of ineffective

assistance of appellate counsel:

> [I]nstruction [on CALJIC No. 17.01] is not necessary when the crime is of a continuous nature, i.e., when the defendant offers the same defense to each act and there is no reasonable basis to distinguish between them. (*People v. Stankewitz* (1990) 51 Cal.3d 72, 100.)

> Petitioner alleges that though appellate counsel raised this issue on appeal, it was not adequately raised because counsel failed to make a trial stipulation part of the record on appeal. The stipulation, included in the petition as Exhibit J, is a list of evidence items booked by police, categorized by type of controlled substance, and listing the weight of each item. The list includes eight items of methamphetamine, 11 items of amphetamine, two items of Valium, two items of codeine, and one item of carisoprodol. The Court of Appeal rejected petitioner's argument on appeal that CALJIC No. 17.01 should have been given. Petitioner claims that the Court of Appeal's decision "would not have been possible" if counsel had included the stipulation in the record. However, the stipulation, for the purpose of this issue, only shows that there were several items of both methamphetamine and amphetamine. The same evidence was presented through the testimony of Deborah Langston, as well as where each item was found in the room where petitioner was found. It is clear from the transcript, including the closing arguments, there were numerous items of each charged controlled substance. Therefore, petitioner has not shown that the addition of the stipulation would likely have changed the outcome. In addition, it does not appear that CALJIC No. 17.01 would have been appropriate since the facts indicate that the crime was of a continuous nature. Petitioner's defense to all of the narcotics was that they belonged to Schlarp. This case factually was not similar to cases requiring CALJIC No. 17.01 where different defenses were proffered as to different acts. (*See People v. Castaneda* (1997) 55 Cal.App.4th 1067 [defense as to one items was that it belonged to defendant's son; defense as to other was that it was planted]; *People v. King* (1991) 231 Cal.App.3d 493 [one item allegedly belonged to another woman; other item allegedly belonged to defendant's boyfriend].) Therefore, petitioner has failed to show that appellate counsel's conduct was prejudicial in the determination of the issue of CALJIC No. 17.01.

(Answer, Ex. 5 at 4-5.)

The record reflects that trial counsel argued that petitioner was entitled to CALJIC

No. 17.01 but the trial court disagreed, finding there was no divisible conduct because all of the

drugs had been discovered in one room. (RT 644-45.) Petitioner's defense at trial was that none

1   of the drugs found belonged to petitioner.  The jury was instructed on the lesser included offense

2   of possession.

3            Here, petitioner has made no effort to demonstrate how inclusion of the written

4   stipulation would have changed the outcome of the appeal.  As noted above, there was testimony

5   at trial that petitioner admitted using methamphetamine the night of the arrest and admitted

6   owning the shaving kit.  The jury had benefit of the written stipulation in the jury room.  (RT

7   234-37.)  Petitioner has failed to demonstrate prejudice under <u>Strickland</u>.  This claim should also

8   be denied.

9            4.  <u>Temporary Lawful Possession</u>

10            Petitioner contends appellate counsel was ineffective on appeal because he failed

11   to argue that the trial court had an obligation, *sua sponte*, to instruct on the defense of temporary

12   lawful possession of a firearm.

13            The state superior court addressed this claim as follows:

14            Temporary possession for the purpose of disposal may be a defense
            to possession of a contraband item.

15
            However, there is no *sua sponte* duty to instruct unless there is
16            some evidence to support the giving of the instruction, i.e., where
            there is some evidence of each of the elements of the defense:  (1)
17            possession is momentary and not based on ownership or right to
            control the item; (2) possession is in furtherance of abandonment
18            or destruction; (3) possession is for the sole purpose of terminating
            the unlawful possession by another person or preventing another
19            person from acquiring possession; and (4) control is not exercised
            for the purpose of preventing imminent seizure by law
20            enforcement.  (<u>People v. Hurtado</u> (1996) 47 Cal.App.4th 805, 810-
            11.)  The theory of transitory possession has not been extended to
21            possession of a firearm by an ex-felon except if the person
            possesses the weapon for self-defense, defense of others or legal
22            necessity.  (<u>People v. Pepper</u> (1996) 41 Cal.App.4th 1029.)

23            Petitioner claims that trial counsel should have requested the jury
            instruction on temporary possession of the firearm based on a
24            statement that petitioner made to police.  Petitioner told Officer
            Maclafferty that he found the gun in a dresser drawer, took it out,
25            wrapped it in a red handkerchief and put it under the mattress.  (RT
            380.)  Petitioner states that <u>People v. Martin</u> (2001) 25 Cal.4th
26            1180, 1191 stands for the proposition that the defense of temporary

23

1
2
3
4
5

possession applies to violations of Penal Code section 12021,
contrary to the holding of <u>Pepper</u>.  However, <u>Martin</u> is a case
involving narcotics, like the majority of temporary possession
cases.  The quoted language dealing with weapons is, at most,
*dictum* in a case whose main issue was that the possession must be
*momentary*.  In fact, <u>Martin</u> acknowledges <u>Pepper</u>'s holding that
the defense does not apply in weapons cases.  (25 Cal.4th at 1090.)
Therefore, trial counsel's failure to request the instruction and/or
the court's refusal to give it was neither erroneous nor prejudicial.

6  (Answer, Ex. 5 at 2-3.)

7  As noted above, evidence was presented that petitioner told a police officer that

8  the gun that was found in the detached garage belonged to Schlarp, but when petitioner found it

9  in a dresser drawer he wrapped it in a handkerchief and placed it under his mattress.  (RT 380:7-

10  28.)  The facts do not suggest petitioner possessed the gun only for moments, abandoned the gun

11  or even intended to abandon the gun after he took control of it.  Because there was not some

12  evidence to support the giving of this instruction, petitioner cannot show prejudice for failure to

13  instruct jurors with respect to the defense of temporary lawful possession, and petitioner's

14  appellate counsel cannot be ineffective for failing to raise this issue on appeal.

15  5. <u>Priors</u>

16  Petitioner contends that in arguing that the trial court had abused its discretion by

17  refusing to strike petitioner's strike priors, appellate counsel overstated the severity of

18  petitioner's criminal history and otherwise failed to adequately present the issue.  (Pet. at 6.)

19  Specifically, petitioner contends appellate counsel erred by stating petitioner had five strikes,

20  rather than three; failed to highlight that the trial court had expressed a willingness to strike one

21  prior, but did not because it felt it would not make any difference; and failed to reiterate the trial

22  court's compliments of petitioner's behavior in the courtroom.  (Petr.'s Mem. Ps & As at 79-81.)

23  The state superior court rejected this claim:

24
25
26

The record indicates that he had three and the Court of Appeal
recognized that he had three. . . .  Therefore, any error could not
have been prejudicial.  In addition, petitioner claims that counsel
failed to point out that the trial court acted arbitrarily in failing to
strike a prior conviction.  However, the trial court expressed that

1

although it would be willing strike one prior strike, it would not strike two priors.  In light of the fact that petitioner had three strikes, striking one strike would have left two, leaving petitioner within the provisions of the Three Strikes Law with the identical sentence.  Therefore, any success on this issue would not have changed the resulting sentence.

2

3

4

5   (Answer, Ex. 5, at 5.)

6          First, a review of the trial court's hearing on the issue of strikes reveals that

7   although the trial judge initially indicated a willingness to strike one prior conviction, the court

8   ultimately decided it would not strike anything.  (RT 910.)  The record reflects the trial judge

9   heard lengthy testimony and argument prior to sentencing and then gave his own lengthy

10  statement of reasons for his sentencing decision.  (RT 803-910.)  The trial judge also expressed

11  his concern about petitioner's "fascination with firearms" (RT 804), recognizing petitioner posed

12  a danger to society.  The trial judge was aware of petitioner's lengthy criminal history by virtue

13  of the probation report and prosecution arguments, and the appellate court had benefit of that

14  record as well.  The few references by appellate counsel to five prior convictions as opposed to

15  three was not prejudicial on this record.

16         Second, the appellate court found that the trial court did not abuse its discretion by

17  refusing to strike some or all of the enhancement allegations of prior convictions of serious

18  felony offenses.  (People v. King, slip op. at 12.)  The appellate court found persuasive the

19  argument that "possession of methamphetamine and a firearm, by a person recently released on

20  parole, can reasonably be considered serious offenses and coupled with [petitioner's] protracted

21  'dismal' record of prior felony convictions and imprisonments amply warranted the trial court's

22  decision not to strike the enhancement allegations." (Id.)  In light of this finding, petitioner

23  cannot demonstrate prejudice under Strickland.

24         Third, the trial court expressed some leniency in sentencing by refusing to adopt

25  the probation officer's recommendation that petitioner receive two consecutive 25-years-to-life

26  terms.  (RT 803-04, see also CT 206.)  The trial court found petitioner's offenses of possession of

25

1   methamphetamine and the weapon occurred at the same place and time and petitioner's

2   cooperation during trial warranted such refusal.  (RT 803-04.)

3          In light of this record, this court cannot find that appellate counsel was ineffective

4   in challenging the trial court's refusal to strike petitioner's prior convictions.  Petitioner has

5   failed to demonstrate that but for counsel's failure to take those steps noted above, the outcome

6   of the appeal would have been different.  Strickland, supra.

7                    6.  Cruel And Unusual Punishment

8          Petitioner contends appellate counsel was ineffective because he failed to raise a

9   cruel and unusual punishment issue on appeal.  Petitioner argues a life sentence for non-violent,

10  non-serious, "merely possessory" charges is cruel and unusual, citing Brown v. Mayle, 283 F.3d

11  1019 (9th Cir. 2002) and Andrade v. Attorney General, 270 F.3d 743 (9th Cir. 2001).

12         The state superior court rejected this claim, finding it was not reasonable for

13  appellate counsel to be held accountable for cases only recently published.  (Answer, Ex. 5 at 6.)

14  The court also found that petitioner's case was factually distinguishable from Brown and

15  Andrade, because they involved defendants convicted of petty theft.

16            In petitioner's case, the weapons charge is a straight felony,
              although it is only criminal because of petitioner's prior conduct,
17            but the strikes are not necessarily both used to criminalize the
              conduct and as strikes because of petitioner's other prior
18            convictions.  As for the possession charge, while it is a wobbler
              like petty theft with a prior, it does not rely on prior conduct or any
19            dual use of priors.  As a result, the reasoning in Andrade and
              Brown does not apply to petitioner.
20

21  (Answer, Ex. 5 at 6.)

22         Both Andrade and Brown have been reversed by the United States Supreme

23  Court.  Ewing v. California, 538 U.S. 11 (2003); Lockyer v. Andrade, 538 U.S. 63 (2003).

24  Moreover, as respondent notes, given the law in California at the time, such challenges were

25  frequently rejected by California courts.  (See cases cited in Answer at 38.)  Even assuming,

26  arguendo, appellate counsel should have raised such a claim, petitioner cannot demonstrate the

1    outcome would have been different, particularly in light of the United States Supreme Court

2    holdings in Andrade and Ewing.  Thus, this claim also fails.

3           C.  Cruel And Unusual Punishment

4                       Petitioner's final claim is that his life sentence constitutes cruel and unusual

5    punishment.  (Pet at 6; Traverse at 51.)

6                  In Lockyer v. Andrade, 538 U.S. 63 (2003), the United States Supreme Court

7    made clear that, in the context of an Eighth Amendment challenge to a prison sentence, the "only

8    relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of'

9    framework is the gross disproportionality principle, the precise contours of which are unclear,

10   applicable only in the 'exceedingly rare' and 'extreme' case."  Andrade, 538 U.S. at 72 (citing

11   Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 290 (1983);

12   and Rummel v. Estelle, 445 U.S. 263, 272 (1980)).  The Andrade Court concluded that two

13   consecutive 25-years-to- life sentences with the possibility of parole, imposed under California's

14   three-strikes law following two petty theft convictions with priors, did not amount to cruel and

15   unusual punishment.  Id. at 77; see also Ewing v. California, 538 U.S. 11 (2003) (holding that a

16   sentence of 25 years to life imposed for felony grand theft under California's three-strikes law did

17   not violate the Eighth Amendment).  "Outside the context of capital punishment, successful

18   challenges to the proportionality of particular sentences have been exceedingly rare."  Rummel,

19   445 U.S. at 272.

20                 The United States Supreme Court has cautioned federal courts to be "'reluctan[t]

21   to review legislatively mandated terms of imprisonment.'"  Hutto v. Davis, 454 U.S. 370, 374

22   (1982) (quoting Rummel, 445 U.S. at 274).  "Generally, as long as the sentence imposed upon

23   the defendant does not exceed statutory limits, [a federal court] will not overturn it on eighth

24   amendment grounds."  United States v. Zavala-Serra, 853 F.2d 1512, 1518 (9th Cir. 1988).  See

25   also Belgarde, 123 F.3d at 1215; United States v. McDougherty, 920 F.2d 569, 576 (9th Cir.

26   1990).  "[A] sentence within the limits set by a valid statute may not be overturned on appeal as

cruel and unusual punishment unless the sentence is so 'grossly out of proportion to the severity

of the crime' as to shock our sense of justice." United States v. Cupa-Guillen, 34 F.3d 860, 864

(9th Cir. 1994) (quoting United States v. Vega-Mejia, 611 F.2d 751, 753 (9th Cir. 1979)) (citing

United States v. Washington, 578 F.2d 256, 258-59 (9th Cir. 1978)).

In Andrade, the Supreme Court upheld imposition of two consecutive twenty-five

years to life sentences under California's three strikes law after Andrade was convicted of petty

theft of $150.00 worth of videotapes, with several prior convictions for petty theft, burglary and

drug offenses. Andrade, 538 U.S. at 66-67. In Ewing, the Court upheld a sentence of twenty-

five years to life imposed under the same law following a conviction for grand theft involving

three golf clubs valued at $399.00 each with four prior felony convictions for burglary and

robbery. Ewing, 538 U.S. 16-17. See also Rummel, supra (upholding life sentence with the

possibility of parole for recidivism based on three underlying felonies of fraudulent use of a

credit card for $80.00, passing a forged check for $28.36, and obtaining $120.75 under false

pretenses); Harmelin, supra (upholding sentence of life without the possibility of parole for a first

offense of possession of more than 650 grams of cocaine); see also United States v. Carr, 56

F.3d 38, 39 (9th Cir.1995) (sentence of 22 years upon conviction for sale of 66.92 grams of

cocaine base with enhancement for two previous convictions for minor drug sales did not raise

inference of gross disproportionality).

Under the decisions announced in Andrade and Ewing, petitioner's case is not one

of those "exceedingly rare" sentences fitting within the contours of the "gross disproportionality"

principle, and thus does not constitute cruel and unusual punishment. In the instant action,

petitioner was convicted of two felony counts: possession of methamphetamine and possession

of a firearm by a person convicted of a felony. (Answer, Ex. 1 at 1.) Jurors also found that

petitioner was personally armed with a firearm in the commission of a methamphetamine

offense. (Id.) Petitioner's record renders his sentence indistinguishable from those upheld in

Andrade and Ewing. Petitioner's Eighth Amendment claim must therefore be denied.

1 | IV.  Evidentiary Hearing

2 |         On page 13 of his traverse, petitioner requests that the court hold an evidentiary

3 | hearing.  However, petitioner fails to point to any issue which requires that an evidentiary hearing

4 | be held in order for the court to render a decision with respect to that issue.  In any case, a habeas

5 | petitioner is entitled to an evidentiary hearing on a claim only "if he alleges facts that, if proven,

6 | would entitle him to relief."  Turner v. Calderon, 281 F.3d 851, 890 (9th Cir. 2002).  Even

7 | assuming all of the facts alleged by petitioner are true, petitioner still is not entitled to habeas

8 | relief.

9 | V.  Conclusion

10 | _____For all of the foregoing reasons, the court will deny petitioner's request for an

11 | evidentiary hearing and recommend that petitioner's application for writ of habeas corpus be

12 | denied.

13 |         In accordance with the above, IT IS HEREBY ORDERED that petitioner's

14 | request for evidentiary hearing is denied.

15 |         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

16 | writ of habeas corpus be denied.

17 |         These findings and recommendations are submitted to the United States District

18 | Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days

19 | after being served with these findings and recommendations, any party may file written

20 | objections with the court and serve a copy on all parties.  Such a document should be captioned

21 | "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

22 | /////

23 | /////

24 | /////

25 | /////

26 | /////

1  failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED:  June 20, 2007.

4

5

6                                        UNITED STATES MAGISTRATE JUDGE

7  1/001; king0629.157

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26